**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**CYPRESS INSURANCE COMPANY**                                           **PLAINTIFF**

**v.**                              **Case No. 3:19-cv-00114-KGB**

**BRADLEY VEAL,** *et al.***,**                                          **DEFENDANTS**

<u>**OPINION AND ORDER**</u>

Before the Court is a motion for summary judgment filed by plaintiff Cypress Insurance Company ("Cypress") (Dkt. No. 11). Defendants Bradley Veal; James K. Cole a/k/a James Keith Cole, individually and d/b/a Coles Transport a/k/a Cole's Transport a/k/a Cole Transport; Phillip Hollis; John Doe; and John Doe Entities I-II have not responded, and the motion is ripe for decision (Dkt. No. 22, at 1).

Cypress properly served Mr. Veal, and Mr. Veal answered Cypress's complaint (Dkt. No. 9). Cypress also properly served Mr. Cole and Mr. Hollis with a summons and complaint (Dkt. Nos. 5-1, 8). To date, Cypress has not identified the Doe defendants.

Also pending before the Court is Cypress's second motion for default judgment against defendants Mr. Cole and Mr. Hollis (Dkt. No. 20). A clerk's entry of default has been entered against both Mr. Cole and Mr. Hollis (Dkt. Nos. 18, 19). Neither Mr. Cole nor Mr. Hollis have responded to Cypress's second motion for default judgment and the time for doing so has passed (Dkt. No. 20).

For the following reasons, the Court grants Cypress's motion for summary judgment and second motion for default judgment (Dkt. Nos. 11, 20).

## I.      Factual Background

Pursuant to Local Rule 56.1, Cypress filed a statement of undisputed facts along with its motion for summary judgement (Dkt. No. 13).  *See Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas*, Rule 56.1.  Because none of the defendants have responded to Cypress's motion for summary judgment, Cypress's statement of undisputed facts is deemed admitted and provides the following factual background.

On January 16, 2019, Mr. Veal filed a complaint against Mr. Cole; Mr. Cole d/b/a Coles Transport d/b/a Cole's Transport a/k/a Cole Transport; Mr. Hollis; and Multiple John Does and John Doe entities in the Craighead County, Arkansas Circuit Court ("the state court action") (Dkt. Nos. 11-2; 13, ¶ 1).  *See* Arkansas Judiciary Website, Docket Search, http://caseinfo.arcourts.gov; *Veal v. Cole, et al*, 16JCV-19-40, Complaint (Jan. 16, 2019).  In the state court action, Mr. Veal alleged that he was an employee of Cole's Transport, which Mr. Veal maintains was a registered business owned and operated by Mr. Cole (Dkt. No. 13, ¶ 2).  Mr. Veal does not allege in his complaint that, at the time of the events about which he complains, Cole's Transport was an actual legal entity separate and apart from Mr. Cole (*Id.*, ¶ 3).

Mr. Veal alleges that on March 2, 2016, while acting within the scope of his employment with Mr. Cole, he attempted to move and set up a mobile home with Mr. Cole and Mr. Hollis, a co-employee (*Id.*).  Mr. Veal alleges that he was positioned underneath the mobile home in order to level the foundation when Mr. Hollis attempted to raise the lower side of the trailer with a jack without first lowering the jack on the opposite side of the mobile home causing the mobile home to fall on Mr. Veal and resulting in severe personal injuries and damages (*Id.*, ¶ 4).

Mr. Veal alleges that Mr. Hollis had a duty not to expose negligently others to a risk of injury and to perform his job subject to the ordinary standard of care of a reasonable person moving

a mobile home under the same circumstances (*Id.*, ¶ 5).  Mr. Veal maintains that Mr. Hollis negligently breached the aforementioned standard of care when he allegedly caused the mobile home to fall on Mr. Veal (*Id.*, ¶ 6).  Mr. Veal alleges that Mr. Cole was responsible and vicariously liable for the negligence of Mr. Hollis under the legal doctrine of joint enterprise, respondeat superior liability, and the principles of agency as adopted in the State of Arkansas and further maintains that Mr. Hollis's negligence is imputed to Cole's Transport (*Id.*, ¶ 7).  Mr. Veal alleges that his injuries and damages were the result of negligent hiring by Mr. Cole (*Id.*, ¶ 8).  Finally, Mr. Veal alleges that his injuries and damages were the result of negligent training of Mr. Hollis by Mr. Cole (*Id.*, ¶ 9).  Mr. Veal seeks in his complaint compensatory and punitive damages, pre-judgment and post-judgment interest, expenses, and costs, and Mr. Veal seeks a sum in excess of that required for federal jurisdiction in diversity of citizenship cases (*Id.*, ¶ 10).

At the time of the mobile home incident, Cypress had issued a business auto policy to Mr. Cole d/b/a Cole's Transport, Policy No. 03TRM000986-04 ("the Cypress Policy"), which was in full force and effect as of March 2, 2016 (Dkt. Nos. 11-1; 13, ¶ 11).  Cypress is providing a defense to the defendants in the underlying action under a reservation of rights (Dkt. Nos. 11-3; 13, ¶ 12).  Pursuant to Section I of the Business Auto Coverage Form, liability coverage is only provided for specifically described automobiles shown on the schedule of covered autos; in this instance, the sole covered auto described in the schedule is a 2004 International 8600 tractor ("the covered tractor") (Dkt. No. 13, ¶ 13).  The trailer used by defendants in the mobile home incident was not a covered auto (*Id.*, ¶ 14).

The Cypress Policy provides liability coverage only for the ownership, maintenance, or use of a covered auto (*Id.*, ¶ 15).  The Cypress Policy contains an exclusion stating it provides no coverage for:

3

"Bodily injury" to:

a.  An "employee" of the "insured" arising out of and in the course of:
(1) Employment by the "insured"; or
(2) Performing the duties related to the conduct of the "insured's" business; or

b.  The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:
(1) Whether the "insured" may be liable as an employer or in any other capacity; and
(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract."  For the purposes of the coverage form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

(*Id.*, ¶ 16).  The Cypress Policy contains an exclusion stating that it provides no coverage for:

"Bodily injury" to:
a.  Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or
b.  The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph a. above.

(*Id.*, ¶ 17).  The Cypress Policy contains an exclusion stating that it provides no coverage for:

"Bodily injury" or "property damage" resulting from the handling of property:
a.  Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or
b.  After it is moved from the covered "auto" to the place where it is finally delivered by the "insured."

(*Id.*, ¶ 18).  The Cypress Policy contains an exclusion stating that it provides no coverage for

"'[b]odily injury' or 'property damage' resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered 'auto'" (*Id.*, ¶ 19).

4

The Cypress Policy also includes an exclusion of coverage for punitive damages set forth by way of endorsement which states, in relevant part, the following:

> THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
>
> This endorsement modifies the insurance provided under all coverage forms and is effective on the inception date of the policy or on the date shown below.  The insuring agreement is amended to provide that this insurance does not apply to punitive or exemplary damages which are imposed by a court of law to:
> a. punish a wrongdoer; or
> b. to deter others from similar conduct.

(*Id.*, ¶ 20).

## II.    Summary Judgment

### A.    Legal Standard

Summary judgment is appropriate if there is no genuine issue of material fact for trial. *UnitedHealth Grp. Inc. v. Exec. Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Fed. R. Civ. P. 56).  Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "In ruling on a motion for summary judgment '[t]he district court must base the determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial.'"  *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923-24 (8th Cir. 2004) (internal citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Johnson Reg'l Med. Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373*, 513 F.3d

854, 860 (8th Cir. 2008).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) (citation omitted).

However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).  The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial.  *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008), *cert. denied*, 522 U.S. 1048 (1998).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

### B.      Analysis Of Motion For Summary Judgment

Mr. Veal's complaint in the state court action alleges the following claims against Mr. Hollis and Mr. Cole:  (1) negligence on behalf of Mr. Hollis; (2) respondeat superior on behalf of Mr. Cole; (3) negligent hiring on behalf of Mr. Cole; (4) negligent training on behalf of Mr. Cole; and (5) punitive damages (Dkt. No. 11-2, ¶¶ 20-51).  Cypress filed the instant action seeking a determination that the Cypress Policy issued to Mr. Cole d/b/a Cole's Transport does not apply to the underlying loss described herein and, accordingly, that Cypress has no duty to defend or indemnify (Dkt. No. 12, at 1).  Though defendants have not filed a response to Cypress's motion for summary judgment, Cypress still bears the burden as the moving party to demonstrate the absence of a genuine issue of material fact.  The Court concludes that Cypress has satisfied that burden, finds the absence of a genuine issue of material fact, and grants Cypress's motion for summary judgment in accordance with the following analysis (Dkt. No. 11).

Under Arkansas law, when an insurer's duty to defend is in dispute, the pleadings determine the insurer's duty to defend. *See Murphy Oil USA, Inc. v. Unigard Sec. Ins. Co.*, 61 S.W.3d 807, 812 (Ark. 2001). The duty to defend is broader than the duty to indemnify, and the duty to defend "arises when there is a possibility that the injury or damage may fall within the policy coverage." *Id.* at 812-13 (citing *Home Indem. Co. v. City of Marianna*, 727 S.W.2d 375 (Ark. 1987)). Where there is no possibility that damage alleged in a complaint may fall within the policy coverage, there is no duty to defend. *See id.* at 813.

In interpreting insurance policies, courts should interpret their language in its plain, ordinary, and popular sense. *See Norris v. State Farm Fire & Cas. Co.*, 16 S.W.3d 242, 244 (Ark. 2000) (citing *CNA Ins. Co. v. McGinnis*, 666 S.W.2d 689 (Ark. 1984)). "Where the terms of the insurance policy are clear and unambiguous, the policy language controls," and courts "need not resort to rules of construction in order to ascertain the meaning of an insurance policy when no ambiguity exists." *Scottsdale Ins. Co. v. Morrowland Valley Co., LLC*, 411 S.W.3d 184, 191 (Ark. 2012) (citing *Essex Ins. Co. v. Holder*, 261 S.W.3d 456 (Ark. 2007)). Courts "will not rewrite the terms of an insurance contract under the rule of strict construction against the insurer so as to bind the insurer to a risk that the contract plainly excluded and for which it was not paid." *Id.* (citing *Essex*, 261 S.W.3d at 456).

Mr. Veal's complaint in the state court action alleges the following claims against Mr. Hollis and Mr. Cole: (1) negligence on behalf of Mr. Hollis; (2) respondeat superior on behalf of Mr. Cole; (3) negligent hiring on behalf of Mr. Cole; (4) negligent training on behalf of Mr. Cole; and (5) punitive damages (Dkt. No. 11-2, ¶¶ 20-51).

At the time of the mobile home incident, the Cypress Policy issued to Mr. Cole was in full force and effect (Dkt. No. 12, at 5). The Court has reviewed the Cypress Policy in its entirety

(Dkt. No. 11-1).  The Cypress Policy provided certain auto liability coverage pursuant to the Business Auto Coverage Form and all applicable endorsements (Dkt. No. 12, at 5).  Pursuant to Section I of the Business Auto Coverage Form, liability coverage is only provided for specifically described automobiles shown on the schedule of covered autos; in this instance, the sole covered auto described in the schedule is the covered tractor (Dkt. Nos. 11-1, at 10; 12, at 5).  Section II of the Business Auto Coverage Form provides for certain liability coverages for accidents stemming from the use of a covered auto, obligating Cypress to "pay all sums an 'insured legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'" (Dkt. No. 11-1, at 18).  However, this provision also stipulates that Cypress has "no duty to defend any 'insured' against a 'suit' seeking damages for 'bodily injury' or 'property damage' or a 'covered pollution cost or expense' to which this insurance does not apply" (*Id.*).

Further, the Cypress Policy expressly provides a number of specific exclusions to its liability coverage (*Id.*, at 19-21).  The Cypress Policy excludes bodily injury to an employee of the insured arising out of and in the course of employment by the insured or performing the duties related to the conduct of the insured's business, and this exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury (*Id.*, at 20).  This exclusion does not apply to bodily injury to domestic employees not entitled to workers' compensation benefits or to liability assumed by the insured under an insured contract, though a domestic employee is defined as "a person engaged in household or domestic work performed principally in connection with a residence premises" (*Id.*).  The Cypress Policy excludes bodily injury to any fellow employee of the insured arising out of and in the course of the fellow employee's employment or

while performing duties related to the conduct of the insured's business (*Id.*).  The Cypress Policy excludes bodily injury or property damage resulting from the handling of property moved from the place where it is accepted by the insured for movement into or onto the covered auto or after it is moved from the covered auto to the place where it is finally delivered by the insured (*Id.*). The Cypress Policy also excludes bodily injury or property damage resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered auto (*Id.*).  Finally, the Cypress Policy includes an exclusion of coverage for punitive damages set forth by way of endorsement (*Id.*, at 67).

Cypress maintains that the Cypress Policy does not apply to the underlying action because Mr. Veal's injuries did not result from the ownership, maintenance, or use of a covered auto (Dkt. No. 12, at 8-9).  Even if Mr. Veal's loss resulted from the ownership, maintenance, or use of a covered auto, which Cypress denies, Cypress maintains that summary judgment would still be warranted on the following grounds:  the Cypress Policy does not apply to the loss because of the employee exclusion; the fellow employee exclusion bars coverage for Mr. Veal's claims against Mr. Hollis; the Cypress Policy does not apply because Mr. Veal's injuries resulted from the handling of property after it was transported; and there is no coverage for Mr. Veal's injuries because they resulted from movement of property by a mechanical device (Dkt. No. 15, at 9-14).

The Court concludes, based on the factual record before it, that Mr. Veal's injuries did not arise out of the "ownership, maintenance, or use" of a covered auto.  Further, the Court concludes that Cypress has no duty to defend or indemnify because the Cypress Policy does not apply to the loss because of the employee exclusion; the fellow employee exclusion bars coverage for Mr. Veal's claims against Mr. Hollis; the Cypress Policy does not apply because Mr. Veal's injuries resulted from the handling of property after it was transported; and there is no coverage for Mr.

9

Veal's injuries because they resulted from movement of property by a mechanical device not covered by the Cypress Policy.

Based on the undisputed factual record, the mobile home accident and Mr. Veal's injuries therefrom did not involve the covered tractor.  Nothing in the factual record or in Mr. Veal's underlying allegations indicates that ownership, maintenance, or use of the covered tractor played a role in the events that led to Mr. Veal's injuries.  Cypress maintains that the trailer used in the mobile home incident was not the covered tractor, and that assertion is not contested in this action or contradicted in the pleadings of the state court action (Dkt. No. 12, at 8-9).  The Cypress Policy only provides coverage for non-scheduled trailers when they are attached to a scheduled vehicle (*Id.*, at 9).

Additionally, even if the trailer used in the underlying events was a "covered auto" under the Cypress Policy—which Cypress expressly denies—there would still not be any coverage because the injuries Mr. Veal allegedly suffered stemmed from Mr. Hollis's "attempt[] to raise the lower side of the trailer with a jack without first lowering the jack on the opposite side of the mobile home in a negligent manner not consistent with the industry ordinary standard of care" (Dkt. No. 11-2, ¶¶ 16-19, 23).  Mr. Veal alleges that, at the time of the incident, they "were attempting to move and set a mobile home" and that specifically he "was positioned underneath the mobile home in order to level the foundation for the mobile home." (*Id.*, ¶¶ 14-15).  Therefore, Mr. Veal's injuries did not arise out of the "ownership, maintenance, or use" of the trailer or the scheduled vehicle.  Moreover, Mr. Veal alleges that, at the time of these events, he was an employee of Mr. Cole and that Mr. Hollis was his co-worker (*Id.*, ¶¶ 12-13).  The cause of Mr. Veal's injuries and the circumstances under which those injuries are alleged to have occurred, when considered in the light of the language at issue, exempts the Cypress Policy from applying,

excuses Cypress from providing coverage for the loss, and frees Cypress from any duty to defend Mr. Cole or Mr. Hollis (Dkt. No. 15, at 9).  For these reasons, the Court concludes that the Cypress Policy imposes no coverage for Mr. Veal's alleged injuries, imposes no duty to defend upon Cypress, and imposes no duty to indemnify upon Cypress.  Accordingly, the Court grants summary judgment in Cypress's favor on this issue and concludes that the Cypress Policy does not apply to Mr. Veal's underlying injury allegations.

Cypress also notes that Mr. Veal's underlying complaint contains a claim for punitive damages and asserts that the Cypress Policy specifically excludes punitive damages via endorsement (Dkt. Nos. 11-1, at 67; 15, at 14).  Punitive damage exclusions in Arkansas are allowed by statute.  *See* Ark. Code Ann. § 23-79-307(a)(8).  Punitive damage exclusions "must include a definition of punitive damages substantially similar to the following:  '[p]unitive damages' are damages that may be imposed to punish a wrongdoer and to deter others from similar conduct."  *Id.*; *see also Atl. Cas. Ins. Co. v. Paradise Club*, 219 F. Supp. 3d 938, 947-48 (W.D. Ark. 2016).  The policy provision at issue here contains nearly identical language to the example provided by Arkansas law; the Cypress Policy states that "[t]he insuring agreement is amended to provide that this insurance does not apply to punitive or exemplary damages which are imposed by a court of law to:  a.  punish a wrongdoer; or b.  to deter others from similar conduct" (Dkt. No. 11-1, at 67).  The text of this exclusion clearly defines "punitive damages" in a manner that is "substantially similar" to the language provided by Arkansas law.  Accordingly, the Court finds the Cypress Policy's punitive damages exclusion via endorsement valid and enforceable, and the Court grants summary judgment in Cypress's favor on the issue of Mr. Veal's punitive damages claims.

### III.    Second Motion for Default Judgment

Cypress has filed a second motion for default judgment requesting that the Court enter default judgment against Mr. Cole and Mr. Hollis (Dkt. No. 20).  Neither Mr. Cole nor Mr. Hollis has responded to the second motion for default judgment.  For the following reasons, the Court grants Cypress's second motion for default judgment (Dkt. No. 20).

### A.    Legal Standard

Federal Rule of Civil Procedure 55 contemplates a two-step process for the entry of default judgments.  First, pursuant to Rule 55(a), the party seeking a default judgment must have the Clerk of Court enter the default by submitting the required proof that the opposing party has failed to plead or otherwise defend.  Second, pursuant to Rule 55(b), the moving party may seek entry of judgment on the default under either subdivision (b)(1) or (b)(2) of the rule.  *BMO Harris Bank, N.A. v. Mid-Ark Utilities & Rig Servs., Inc.*, No. 1:18-CV-00042-KGB, 2019 WL 5618269, at *2 (E.D. Ark. Oct. 30, 2019) (citations omitted).  "When a party 'has failed to plead or otherwise defend' against a pleading listed in Rule 7(a), entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b)."  *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998).  Here, a Clerk's default was entered against both Mr. Cole and Mr. Hollis on October 19, 2020 (Dkt. Nos. 18, 19).

The entry of a default judgment is "committed to the sound discretion of the district court." *U.S. on Behalf of & for Use of Time Equip. Rental & Sales, Inc. v. Harre*, 983 F.2d 128, 130 (8th Cir. 1993).  The entry of default judgment, however, "should be a 'rare judicial act.'"  *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1009 (8th Cir. 1993) (quoting *Edgar v. Slaughter*, 548 F.2d 770, 773 (8th Cir. 1977)).  "Default judgment for failure to defend is appropriate when the party's conduct includes 'willful violations of court rules, contumacious conduct, or intentional delays.'"

*Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856 (8th Cir. 1996) (quoting *Harre*, 983 F.2d at 130).

### B.    Analysis Of Second Motion For Default Judgment

Having carefully reviewed the complaint and the exhibits attached thereto and noting that Mr. Cole and Mr. Hollis have failed to defend this action, the Court finds that Cypress's factual allegations, taken as true, state a claim for declaratory judgment against Mr. Cole and Mr. Hollis. As such, the Court grants Cypress's second motion for default judgment and grants Cypress default judgment against Mr. Cole and Mr. Hollis.  The Court concludes that the Cypress Policy imposes no coverage for Mr. Veal's alleged injuries, imposes no duty to defend either Mr. Cole or Mr. Hollis upon Cypress, and imposes no duty to indemnify either Mr. Cole or Mr. Hollis in the underlying state court action pending in the Circuit Court of Craighead County, Arkansas.

### IV.    Conclusion

The Court grants Cypress's motion for summary judgment (Dkt. No. 11).  The Court concludes that the Cypress Policy affords no liability coverage to defendants with respect to the claims made by Mr. Veal in the underlying state court action pending in the Circuit Court of Craighead County, Arkansas.  The Court declares that Cypress has no obligation to defend the defendants named in that suit.  The Court also grants Cypress's second motion for default judgment.  The Court declares that under the Cypress Policy, Cypress has no duty to defend or indemnify Mr. Cole or Mr. Hollis in the underlying state court action pending in the Circuit Court of Craighead County, Arkansas.  The Court shall enter Judgment accordingly.

It is so ordered, this the 23rd day of March, 2021.

Kristine G. Baker
United States District Judge

13